[No. 28299. Department Two. March 3, 1941.]

EDITH D. HEATH, *Appellant,* v. THOMAS DODSON, *Respondent,* F. L. DENMAN *et al., Defendants,* MAUDE VAUGHN, *Individually and as Administratrix, Appellant.*[1]

[1]Reported in 110 P. (2d) 845.

668

*O. O. McLane* and *A. H. Denman,* for appellants.
*Ralph Woods,* for respondent.

MILLARD, J.—March 15, 1935, F. L. Denman and wife entered into an executory contract with Garner Vaughn, a married man, to sell to the latter real property in Pierce county owned by the former. The purchasers paid fifty dollars at the time of the execution of the contract, on which date they entered into possession of the property, and obligated themselves to pay the remainder of the consideration of one thousand dollars in annual payments of ninety-five dollars at a certain stipulated rate of interest. That the contract was placed of record July 6, 1936, in the office of the auditor for Pierce county, is admitted by the judgment creditor in his answer.

March 14, 1936, the purchasers paid to the vendors an installment of ninety-five dollars in addition to $77.65 representing taxes the vendors owed on the real property in controversy. November 30, 1937, the purchasers agreed to pay to the county treasurer further delinquent taxes in the amount of $120.71 against the property. The purchasers paid to the vendors eighty-five dollars April 15, 1939, making a total of $379.36 for which they were credited upon their contract.

On January 23, 1937, Thomas Dodson recovered a judgment against F. L. Denman and wife in the amount of four hundred and fourteen dollars. On November 18, 1939, which was more than two years subsequent to the date of Dodson's recovery of judgment against the vendors, the vendors assigned to their daughter, Edith D. Heath, the contract for the sale of the real property to the Vaughns. The assignment recites a consideration of ten dollars. The assignee testified that she paid three hundred dollars for the assignment. This assignment and a quitclaim deed for the property in controversy executed by the vendors November 18, 1939, in favor of the vendors' daughter, Edith D. Heath, were placed of record in the office of the county auditor for Pierce county November 20, 1939.

In April, 1940, the Vaughns paid to Edith D. Heath, the assignee of the vendors, ninety-five dollars on the principal due under the contract. A payment of eighty-five dollars, April 15, 1939, by the Vaughns to the vendors, and the installment of ninety-five dollars paid in April, 1940, by the Vaughns to the assignee, were made by them with knowledge of the judgment obtained by Dodson against the vendors. Dodson, by letter and personal calls upon the Vaughns, warned them, after Dodson obtained his judgment against the Denmans, not to make further payments to Denman and wife under the contract. April 24, 1939, Dodson filed affidavit for writ of garnishment, which was subsequent to the date of the payment in April, 1939, of eighty-five dollars by the Vaughns to the Denmans. No further endeavor was made by Dodson to effect collection through garnishment proceedings.

May 22, 1940, which was six months and four days subsequent to vendors' assignment of the contract to

Edith D. Heath, and more than three years after entry of Dodson's judgment against the vendors, the judgment creditor levied upon the property assigned and quitclaimed by the vendors to Edith D. Heath, who instituted an action to enjoin the sheriff's sale of the property in controversy and to quiet title thereto in her as against Thomas Dodson.

By cross-complaint, defendants Dodson and sheriff joined as defendants F. L. Denman and wife, vendors, and Garner Vaughn and wife, vendees. The restraining order issued in the cause was quashed, and the land was sold at sheriff's sale to Thomas Dodson June 22, 1940.

The trial court found that the sale by the sheriff of the property to Thomas Dodson was valid and subject only to the right of redemption, if timely made, and subject to the contract of the Vaughns with the Denmans; that defendants Vaughn and wife should pay to Dodson, in accordance with the terms of the contract, the stipulated consideration of one thousand dollars, less payments amounting to $344.24 made by the Vaughns to the Denmans prior to the notice of the judgment recovered by Dodson against the Denmans; and that, if the vendees Vaughn failed to make the payments in accordance with the terms of their contract of purchase, Dodson could declare the contract forfeited and his title to the property would be quieted in him subject only to the right of redemption if seasonably exercised. Judgment was entered accordingly.

Under his judgment, Dodson was given a general lien upon all of the real property of the Denmans, subject to the contract of the Denmans with the Vaughns, which lien the Denmans did not remove by their deed and assignment after entry of the judgment. From the judgment, plaintiff Heath and Maude

Vaughn, individually, and Maude Vaughn as the administratrix of the estate of Garner Vaughn, deceased (Garner Vaughn died subsequent to entry of the judgment), appealed.

Counsel for appellants contend that, after execution of the executory contract in March, 1935, the vendors retained only the bare legal title which was not coupled with a beneficial interest; therefore, it was not subject to execution. As sustaining authority, appellants cite *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705, and argue that the Smiths, the owners of the land and vendors in the case cited, assigned the fee title to Stevens subsequent to their adjudication as bankrupts, but prior to the action by the trustee in bankruptcy to recover the property.

The authority cited is not in point. In *Culmback v. Stevens, supra,* the instrument was executed by the bankrupts more than four months *prior* to the adjudication of bankruptcy. We held that the owners' assignment of their interest in their executory contract of sale of real property, and of all sums to become due under the contract, vested in the assignee a right to enforce performance of the contract of sale against the owners or any one claiming under the owners with notice. We further held that the trustee in bankruptcy acquired only the interest that the debtors possessed, and after the debtors' execution of an executory contract of sale of real property and a valid assignment of the contract and sums due thereon—it should be borne in mind that the contract and assignment of same were executed more than four months prior to the adjudication of bankruptcy—no assets passed to the trustee, and a deed by the bankrupts to the rightful owners could not be set aside as a fraud on creditors.

After the execution of the contract, and the assign-

ment by the vendors to a third person of the payments to become due on the contract, nothing remained in the vendors other than the naked legal title to the property, in trust first for the assignee of the contract, and second for the vendees in the contract in case they performed it.

*Vandin v. McCleary Timber Co.,* 157 Wash. 635, 289 Pac. 1016, differs not in principle from *Culmback v. Stevens, supra.* There, as in the case at bar, the judgment recovered against the vendor was a lien upon such right and interest as the judgment debtor had. at the time the judgment was recovered and no more. The equitable right of the vendees to require a conveyance on fulfilling their part of the contract would not be set aside by the attaching of the judgment lien.

■ The lien of respondent's judgment upon interest of the judgment debtors (Denmans) in real property in controversy attached from date of entry of that judgment. *Konnerup v. Milspaugh,* 70 Wash. 415, 126 Pac. 939. See, also, *Searle v. Bird,* 94 Wash. 21, 161 Pac. 838; Rem. Rev. Stat., §§ 445 and 445-1 [P. C. §§ 8110-11, 8110-12].

■ At the time of the entry of the judgment in January, 1937, it became a lien upon all real property then owned by the Denmans. The judgment crediitor did not, of course, acquire any greater interest in the property than the Denmans then had, and as there was a valid, outstanding contract of purchase held by the Vaughns, the respondent's lien attached only to such interest as the Denmans retained. *MacDonald v. Curtis,* 119 Wash. 384, 205 Pac. 1041; 31 Am. Jur. 27; 15 R. C. L. 799; Annotation 87 A. L. R. 1506.

The interest of the Denmans (vendors) in the real property they contracted to sell to the Vaughns is bound by the lien of Dodson's judgment of January

1937, against the Denmans to the extent to which the contract was unexecuted. The lien of that judgment against the Denmans was enforcible by the judgment creditor against the vendees with notice as to all sums remaining unpaid by the vendees upon the contract.

The judgment debtor could not destroy the lien by assigning or quitclaiming his interest in the contract and the real property to a third party after entry of the judgment. If the interest of the vendors were not subject to lien of judgment, all that the vendors would have to do to free the land from judgment liens would be for the owner of the lands to enter into an executory contract for its sale.

It is the rule in this state that a judgment recovered against a vendor of land, after the execution of a contract for its sale, but prior to the making and delivery of a deed, is a lien upon the legal title remaining in the vendor and binds the land to the extent of the unpaid purchase money; and, on a sale under such judgment, the sheriff's vendee would stand precisely in the situation of the original vendor. If the vendee, with actual notice of the judgment, pays the remainder of the purchase money to the original vendor or assignee of the original vendor, such payment is not valid as against the judgment creditor's lien on the land. Of course, if all the purchase money has been paid at the date of the judgment, nothing would remain in the vendor except a naked legal title, to which the lien of the judgment would not attach. See 34 C. J. 598-599, § 916; 15 R. C. L. 803; 2 Freeman on Judgments (5th ed.), 2026, § 965.

The judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.