429 P.2d 386

**FIRST SECURITY BANK OF IDAHO, NATIONAL ASSOCIATION, Plaintiff-Respondent,**

v.

**Avery E. ROGERS and Dorothy Rogers, husband and wife, Defendants,**

**Fireman's Fund Insurance Company and Credit Adjustment Agency, Inc., Defendants-Appellants,**

**Nez Perce Roller Mills, a corporation, Defendant-Respondent,**

**Murphy Finance Company, a corporation, and Walter W. Seibly, Defendants.**

No. 9949.

Supreme Court of Idaho.

June 29, 1967.

Ware, Stellmon & O'Connell, Lewiston, for appellant.

Madden, Randall, Bengtson & Peterson, Lewiston, for First Security Bank of Idaho.

Blake, Givens, Feeney & Clark, Lewiston, for Nez Perce Roller.

McQUADE, Justice.

In this interpleader action under rule 22, Idaho R.Civ.P., instituted by respondent First Security Bank, the district court ruled on summary judgment that one claimant to the fund deposited in court, the respondent Nez Perce Roller Mills, was entitled to the entire fund of $4,061.86, and that the appellants Fireman's Fund Insurance Company and Credit Adjustment Agency, were secondary claimants. This appeal followed.

Avery E. and Dorothy Rogers, husband and wife, entered into a contract in December 1959, with A. W. and Ruth Eaton for the sale of certain real property located in Nez Perce County. Under terms of that contract and a contemporaneous escrow agreement designating First Security Bank as escrow holder, the Eatons were to make periodic payments toward purchase of the land directly to the escrow holder.

In January 1962, Nez Perce Roller Mills obtained a judgment against the Rogers and filed an abstract of judgment in the Nez Perce County recorder's office. From the time of filing the judgment became a lien upon all real property owned by the Rogers in Nez Perce County. I.C. § 10–1110. In January 1963, the appellant Fireman's Fund Insurance Co. obtained a judgment in the Nez Perce County district court against the Rogers, although this judgment did not become a lien until June 1965, when an abstract was recorded with the county recorder. Finally, in October 1963, the Credit Adjustment Agency obtained its judgment against the Rogers, which judgment was filed for record in Nez Perce County in December 1963. The record is silent as to whether the Eatons at any time received actual notice of the judgment liens against the Rogers.

On April 26, 1965, the Eatons deposited into escrow, a lump sum final payment under the contract of sale. Of this sum the amount of $4,061.86 constitutes the fund in controversy in the interpleader proceedings. Nez Perce Roller Mills attempted to reach

this fund by obtaining a writ of execution and serving a notice of garnishment on the First Security Bank on May 5, 1965. The bank's answer to the garnishment denied its indebtedness to the Rogers. Nez Perce Roller Mills did not traverse the bank's answer.

On September 7, 1965, First Security Bank instituted this interpleader action by depositing with the clerk of the Nez Perce County district court the $4,061.86. At this time, the claimants interpleaded by the bank held the following judgment-claims, including interest, against the Rogers: Nez Perce Roller Mills, $4,178.00; Fireman's Fund Insurance Company, $867.00; and Credit Adjustment Agency, $167.05. The other claimants served as defendants in the action—the Rogers, Murphy Finance Company, and Walter W. Seibly—failed to answer and their defaults were entered by the district court.

Fireman's Fund Insurance Company and Credit Adjustment Agency next proceeded to serve notices of garnishment on the bank and district court clerk. The answers to garnishment stated that the fund was being held in court pending the outcome of the interpleader litigation.

Nez Perce Roller Mills moved for summary judgment pursuant to rule 56, Idaho R.Civ.P., and Fireman's Fund and Credit Adjustment Agency filed a separate cross-motion for summary judgment. The district court ruled that the lien of judgment held by Nez Perce Roller Mills was prior to the judgment liens of Fireman's Fund and Credit Adjustment Agency, and entered summary judgment in favor of Nez Perce Roller Mills.

On this appeal, Fireman's Fund Insurance Company and Credit Adjustment Agency initially challenged the propriety of the interpleader action by respondent First Security Bank. Appellants argue that at the time the bank received Eaton's payment there were no creditors of the Rogers actively pressing claims against the funds held by the bank, and consequently the bank's action was not brought in good faith.

■■■ Rule 22, Idaho R.Civ.P., provides in part:

"Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or *may be exposed* to double or multiple liability. * * *" (Emphasis supplied).

This emphasized language indicates an intent that a plaintiff may interplead present as well as prospective claimants under the rule. Moreover, since the purpose of interpleader is to protect against multiple litigation, interpleader is a proper remedy whenever, as in this case, a stakeholder stands in reasonable apprehension of diverse claims against his fund. Onyx Refining Co. v. Evans Production Corp., 182 F.Supp. 253 (N.D.Tex. 1959); 2 Barron & Holtzoff, Federal Practice and Procedure § 551 (1961 ed.); 3 Moore, Federal Practice §§ 22.08 [1], 22.08 [2] (1966 ed.). The existence of several judgment creditors sufficiently establishes a reasonable threat of multiple claims against the respondent bank, Gannon v. American Airlines, 251 F.2d 476 (10th Cir. 1958); Prudential Insurance Company of America v. Shawver, 208 F. Supp. 464 (W.D.Mo.1962); 3 Moore, Federal Practice, § 22.08 [1].

■■■ Appellants also contend that the respondent bank could not, consistently with its duties as escrow agent for the Rogers and Eatons, institute the interpleader action by paying the fund into court. The express terms of the escrow agreement, however, permitted the bank, at its option, to withhold delivery of all documents and property until the bank's rights and duties had been "finally determined by judicial action." Apart from the authority granted by this clause, the escrow agent is ordinarily entitled to interplead parties and claimants to property held by the agent to determine their respective rights. See, e.g., Security Trust & Savings Bank v. Carlsen, 205 Cal. 309, 271 P. 100, 470, 60 A.L.R. 630 (1928);

Pacific Firestone Escrow Co. v. Food Giant Markets, Inc., 202 Cal.App.2d 155, 20 Cal. Rptr. 570 (1962); Drummond Title Co. v. Weinroth, 77 So.2d 606 (Fla. 1955); First National Bank of Wallace v. Callahan Mining Co., 28 Idaho 627, 155 P. 673 (1916).

Appellants contend that the doctrine of equitable conversion must apply, so that after execution of the contract with the Eatons, Rogers' interest in the property was transformed from an interest in realty to an interest in personalty to which the judgment lien could not attach.

The doctrine of equitable conversion is a fiction resting upon the fundamental rule of equity that equity regards that as done which ought to be done. Under the doctrine, an equitable conversion takes place when a contract for the sale of real property becomes binding on the parties. The purchaser is then treated in equity as having an interest in realty, and the .vendor an interest in personalty, that is, the right to receive the purchase money. The doctrine was originally applied in English jurisprudence in controversies between heirs and personal representatives of deceased persons to ascertain whether certain property of the decedent should be treated as realty or personalty in its devolution. 2 Pomeroy, Equity Jurisprudence § 368 (5th ed. 1941); 2 Story, Equity Jurisprudence § 1091 (14th ed. 1918).

The doctrine of equitable conversion derived out of a situation peculiar to the administration of estates where the conventional principles of common law operated unjustly, and an appeal to the Chancellor's conscience was necessary to effect an equitable adjustment of property interests. Pound, The Progress of The Law 1918–1919, 33 Harv.L.Rev. 813, 831 (1920). The doctrine is not one of universal application. Dean Pound has stated:

"When we speak of conversion we are not describing a condition of the property for all purposes with respect to everybody but are giving a name to a situation resulting from the application of equitable doctrines to a state of facts between certain parties." Id. at 831.

The doctrine of equitable conversion generally does not apply to the facts of the instant case. The majority rule is that a judgment lien against a vendor after the making of the contract of sale, but prior to making and delivery of the deed, extends to all of the vendor's interest remaining in the land and binds the land to the extent of the unpaid purchase price. Chain O'Mines v. Williamson, 101 Colo. 231, 72 P.2d 265 (1937); Heider v. Dietz, 234 Or. 105, 380 P.2d 619 (1963); May v. Emerson, 52 Or. 262, 96 Pac. 454, 1065 (1908); Heath v. Dodson, 7 Wash.2d 667, 110 P.2d 845 (1941); Annot., 87 A.L.R. 1505 (1933); 30A Am.Jur. Judgments § 505; Simpson, Equitable Conversion, 44 Yale L.J. 559, 575 (1935).

Nez Perce Roller Mills' claim to the interpleaded fund, based upon a valid lien against the Rogers' interest in realty transferred to the Eatons, was entitled to priority over the appellants' claims. Where an interest in realty is subject to liens of judgment, and such interest is transformed into personalty by sale of the realty, a court having custody of the proceeds of sale should, in the exercise of its equity jurisdiction, extend the judgment liens to the proceeds, so as to resolve the creditors' conflicting claims to priority. Cohen v. Wasserman, 238. F.2d 683 (1st Cir. 1956) (condemnation proceeds); In re Torchia, 188 F. 207 (3d Cir. 1911) (proceeds of debtor's property in receivership); Worcester v. City of Boston, 179 Mass. 41, 60 N. E. 410 (1901) (tax sale proceeds); Servis v. Dorn, 76 N.J.Eq. 241, 76 A. 246 (1909) (proceeds from mortgage foreclosure sale); Withers v. Carter, 45 Va. (4 Grat.) 407 (1848); 2 Freeman, Judgments § 943 (5th ed. 1925).

Since, as we have held, Nez Perce Roller Mills obtained a prior valid lien against the Rogers' interest in the realty, and the trial court correctly extended this prior lien to the proceeds held in custody of the court, we need not consider appellants' further

contention that the fund was subject to garnishment while held by the court.

The judgment is affirmed. Costs to respondents.

McFADDEN, SPEAR, JJ., and FELTON, DONALDSON, D. J., concur.