590 P.2d 1168

**Manuel ORTIZ, Plaintiff-Appellee,**

v.

**David L. LANE, Defendant-Appellant.**

**No. 3303.**

Court of Appeals of New Mexico.

Jan. 16, 1979.

Rehearing Denied Feb. 1, 1979.

David W. King, Threet, Threet, Glass & King, Albuquerque, for defendant-appellant.

Christopher Lucero, Jr., Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Ortiz sued Lane for a return of property held under a real estate contract in which Lane held the legal title. Judgment was entered that Lane execute a quitclaim deed conveying the property to Ortiz based upon

the doctrine of equitable estoppel. We reverse and hold that Ortiz is entitled to a return of the property but not to a quitclaim deed from Lane.

The trial court made the following findings of fact and conclusions of law:

### Findings of Fact

1. That on or about July 5, 1974, the plaintiff purchased the property described in the First Amended Complaint of John C. Brooks and Roberta M. Brooks.

2. That U. S. Life Title Company was the title and closing agent and the Albuquerque National Bank, East Central Office, was the escrow agent in the transaction and that Glenn Justice Mortgage Company was the mortgage company to whom the first mortgage was to be paid.

3. That all parties necessary to the transaction were notified and all payments necessary to the transfer of title were made.

4. That on June 11, 1974, the defendant, David Lane, had said property assigned to him by prior owners *for a real estate commission owed to David Lane for the sale of said property.*

5. That on November 5, 1974, the defendant, David Lane, sent a notice of default to John C. Brooks and Roberta Brooks for One Hundred Eighty-two Dollars ($182.00) *due as commission for the sale of said property.*

6. That the plaintiff has heretofore deposited with the Court the sum of One Hundred Eighty-two Dollars ($182.00), *which is all the money due defendant, David Lane, as a real estate commission.*

7. That on December 6, 1974, the defendant, David Lane, recorded a Special Warranty Deed from John C. Brooks and Roberta Brooks to Henry D. Baca and Martha A. Baca in an effort to effectuate a prior recorded deed from Henry D. Baca and Martha A. Baca to David Lane which was recorded on June 12, 1974.

8. That at the time the defendant David Lane recorded the Special Warranty Deed of December 6, 1974, he had actual and constructive knowledge that plaintiff had purchased the property in question.

9. That the defendant, David Lane, did not send notice of default letters to the plaintiff pursuant to the terms of a certain Real Estate Contract under which he claimed an interest in the property herein.

10. That the plaintiff made mortgage payments on the first mortgage to Glenn Justice Mortgage Company from July 1974 through August 1975, even though during most of said time the defendant, David Lane, was in possession of and receiving rental income from said property.

### Conclusions of Law

1. That this Court has jurisdiction over the parties and subject matter of this action.

2. *That the defendant, David Lane, is equitably estopped from asserting title to or interest in the property* described as follows:

> Lot numbered Twenty (20) in Block numbered Sixteen (16) of Plat of Blocks 13 to 25 inclusive of Altamont, an Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on Plat of said Addition, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on February 9th, 1953.

as he had actual and constructive knowledge that the plaintiff had purchased said property prior to recordation of the Special Warranty Deed on December 6, 1974, and any rights, title or interest which defendant, David Lane, claims in said property constitutes a cloud on plaintiffs title *and the defendant shall execute a Quitclaim Deed transferring said property to the plaintiff.* [Emphasis added.]

On January 10, 1974, Baca sold Brooks the property above described under a real estate contract, subject to a mortgage to Glenn Justice Mortgage Co., Inc. Brooks was required to make payments of $162.00 per month on the mortgage and $20.00 per

month on the real estate contract due Baca, all payable to Albuquerque National Bank as escrow agent.

Pursuant to the contract, Brooks executed a Special Warranty Deed to Baca under the same date. Lane was the real estate salesman who handled this transaction and for which Baca owed Lane a real estate commission.

On June 11, 1974, Baca conveyed to Lane by warranty deed and by an assignment all of his interest in the property and Lane made two mortgage payments that totaled $657.22. Lane obtained this property for investment purposes. The assignment was executed because Lane agreed to assume the mortgage payments in arrears.

Ortiz also became interested in the purchase of this property for investment purposes. On June 24, 1974, without knowledge of Lane's title, Ortiz inquired of Lane the type of real estate contract held. Lane told Ortiz that a balance was due and that a real estate commission was owed to Pargin Realty, a company by whom Lane was employed. In this conversation, Ortiz told Lane that he, Ortiz, was negotiating to buy the property, and Lane made no claim to ownership.

Ortiz engaged a title company to search the title and prepare the necessary papers. Lane was informed by the title company that Ortiz was purchasing the property and would bring the payments up to date. Ortiz negotiated the purchase with Brooks.

On July 5, 1974, Brooks, with an equitable title, conveyed the property to Ortiz *by warranty deed subject to the Baca-Brooks real estate contract. It was duly recorded the same day.* This deed was prepared by the staff of the title company. The parties agree that this instrument was an assignment to Ortiz of Brooks' equitable and beneficial estate in the property.

The title company also notified the Albuquerque National Bank of Ortiz' purchase of the property and Ortiz paid the bank $794.60, $657.72 of which was paid to Lane to reimburse him for previous payments made on the mortgage. *Lane repeatedly denied any knowledge of the source of this refund.*

The title company also notified Glenn Justice Mortgage Co. of the Ortiz purchase and thereafter Ortiz made payments due on the mortgage from July through November, 1974. Here, again, Lane testified that he had no knowledge of the person making the payments. In the interim period, Ortiz made improvements on the property to prepare it for rental purposes.

On November 5, 1974, Lane, with knowledge that Ortiz intended to and had purchased the property, mailed a notice of default to Brooks for failure to remit the sum of $182.00 per month as provided for in the contract. Notice was not sent to Ortiz, the purchaser who made the mortgage payments. On December 6, 1974, Lane executed an affidavit of default and termination of the Baca-Brooks real estate contract, which affidavit was directed to Brooks. Lane also obtained possession of the Brooks-Baca Special Warranty Deed from the Albuquerque National Bank, and recorded both instruments on the above date.

On December 20, 1974, Ortiz met Lane at the property and a dispute ensued over its ownership. Lane changed the locks on the doors of the house, excluded Ortiz and rented the property.

On January 15, 1975, Ortiz sued Lane *for a return of the property.* During the pendency of this suit, Ortiz continued to make the mortgage payments until September, 1975 even though Lane was in possession of the property receiving rental income. *Nevertheless, Lane testified that, during the first five months of 1975, he was without knowledge of the person making the payments. He did tell Glenn Justice Mortgage Co. not to accept payments from anyone but it refused to do so.* Lane began making mortgage payments in March, 1975, some 10 months after he obtained legal title. Unquestionably, Lane impliedly consented to the Brooks-Ortiz assignment.

We do not hesitate to say that Lane and Ortiz were both negligent with respect

to their relationship and their lack of concern about the ownership of the property and the payments on the mortgage. Neither do we commend the title company which prepared a "warranty deed" from Brooks to Ortiz. We repeat our admonition that "equity" is a synonym of right and justice; that fairness, justness and right dealing should dominate all commercial transactions and practices. *Ott v. Keller,* 90 N.M. 1, 558 P.2d 613 (Ct.App.1976). "It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. [citation omitted] Its compulsion is one of fair play." *McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114, 115 (1937).

■ The trial court found that on July 5, 1974, Ortiz purchased the property from Brooks. This was evidenced by the "odd" warranty deed. Lane contends that Ortiz could not purchase the property because Brooks did not own it. Lane is mistaken. "The commonly accepted definition of 'purchased' is a binding agreement to pay an agreed price. * * * Under any definition of 'purchase' the transaction must be viewed in its entirety and if sufficient events occur a purchase can be found." *First Nat. Bank & Trust Co. of Chickasha v. United States,* 462 F.2d 908, 910 (10th Cir. 1972). The real estate "contract operates as an equitable conversion. The vendee's interest becomes realty and the vendor's interest becomes personalty. In equity the purchaser is regarded as the owner liable for payment of the purchase price. The vendor holds the legal title in trust for him." (Ibid.) The evidence of Ortiz' "purchase" was substantial.

When Brooks purchased the property he was vested with the beneficial and equitable title thereto. *Snipes v. Dexter Gin Co.,* 45 N.M. 475, 116 P.2d 1019 (1941). Baca, as the vendor, held the legal title as trustee for security only. *Trickey v. Zumwalt,* 83 N.M. 278, 491 P.2d 166 (1971).

When Lane obtained Baca's interest in June, 1974, he only had a legal title, a title that was held in trust for security only.

Absent default, he had no beneficial interest in the property. Ortiz, however, is not entitled to a complete title until the Glenn Justice Mortgage is paid in full.

Lane protests findings Nos. 4, 5 and 6 that are limited to references to Lane's real estate commission. We agree that there is no evidence to support these findings. However, these references are immaterial. Ortiz did not contest Lane's legal title, and Lane's notice of default was sent to the wrong person. The harmless error arises because the trial court blindly adopted the requested findings of Ortiz. The requested findings and their adoption by the court do not receive our plaudit.

The other findings of the trial court are sustained by substantial evidence.

The trial court concluded that Lane was equitably estopped from asserting title to or any interest in the property; that Lane's title was a cloud on Ortiz' title. Therefore, Lane shall execute a quitclaim deed transferring said property to Ortiz.

Here, again, the trial court adopted Ortiz' conclusion of law. Although we do not applaud Lane's conduct, we can discern no evidence nor any findings that support this conclusion. If trial lawyers would learn the art of presenting proper findings and conclusions to the district court, and the district court would learn the art of reading the requests, we would not be burdened with these types of appeal. Requested findings and conclusions should not slip through the judge's fingers like an eel.

Appellate counsel for Ortiz was not trial counsel and he is absolved of any criticism.

■ The status of this case in the trial court is as follows: It was wrongful for Lane to obtain possession of and file the Brooks-Baca Special Warranty Deed. Lane holds only legal title to the property in trust for security. Ortiz is the owner of the beneficial and equitable title to the property and is entitled to possession thereof. He must undertake the same duties that Brooks had under the Baca-Brooks real estate contract except the payment of Lane's real estate commission. Lane has received

sufficient income from the rental of the property to pay his commission. Lane is under no duty to execute a quitclaim deed to Ortiz.

This case is reversed and remanded to the district court. The trial court shall vacate the judgment entered. A judgment shall be entered (1) that Ortiz is entitled to possession of the property under the Baca-Brooks real estate contract; (2) that the Brooks-Baca Special Warranty Deed shall be placed in the possession of the escrow agent; (3) that Lane shall prepare for filing proper instruments that will declare that the Special Warranty Deed was inadvertently filed and that he does not hold the complete title to the property.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., specially concurs.

HERNANDEZ, Judge (specially concurring).

There are two preliminary matters that must be mentioned before discussing the defendant Lane's (Lane) points of error. The claim against the defendant Albuquerque National was dismissed with prejudice and no appeal was taken from that order. The plaintiff in his first amended complaint prayed for return of the subject property. Since Lane had previously declared a forfeiture and taken possession of the property, the plaintiff's prayer was in reality a prayer for relief from the forfeiture. Consequently, this case falls within the equity jurisdiction of the courts. "The power of a court of equity to relieve from an unreasonable forfeiture is well established." *Moore v. Bunch,* 29 Mich.App. 498, 501, 185 N.W.2d 565, 567 (1971); *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476.

Lane's first point of error is that the trial court erred in making findings 1 and 3 through 10, and in reaching conclusion No. 2. As to finding No. 1, he argues that Mr. and Mrs. Brooks (Brooks did not own the property but was buying it from Mr. and Mrs. Baca (Baca); consequently, Brooks had

no title to convey. He does not dispute that Brooks did execute and deliver a warranty deed purporting to convey the property to the plaintiff. That deed was dated July 5, 1974, and was filed for the record the same day. The deed recited that the conveyance was:

"Subject to that certain FHA Mortgage to Glenn Justice Mortgage Company, Inc., dated October 12th, 1973; filed for record October 16th, 1973, in Book MD–53A, page 874, records of Bernalillo County, New Mexico, which purchaser herein assumes and agrees to pay.

Subject to that certain Real Estate Contract executed by and between Henry B. Baca and Martha A. Baca, his wife, as owners, and John C. Brooks and Roberta M. Brooks, his wife, as Purchasers, dated January 10, 1974, recorded in Book Misc. 348, page 555, in the office of the County Clerk of Bernalillo County, New Mexico, which Purchasers herein assumes and agrees to pay."

Generally, a conveyance of realty passes all of the interests of the grantor unless there is a specific or implied exemption. *Metzger v. Ellis,* 65 N.M. 347, 337 P.2d 609 (1959). As our Supreme Court pointed out in *Mesich v. Board of County Com'rs. of McKinley Co.,* 46 N.M. 412, 416, 129 P.2d 974, 976 (1942):

"In law the effect of a contract whereby the owner agrees to sell and another agrees to purchase a designated tract of land, the vendor remains the owner of the legal title to the land; he holds the legal title. [Citation omitted.] But, in equity the vendee is held to have acquired the property in the land and the vendor as having acquired the property in the price of it. The vendee is looked upon and treated as the owner of the land and the equitable estate thereof as having vested in him. * * * The vendor, before payment, holds the title as trustee for security only."

Therefore, the plaintiff by the deed of July 5, 1974, acquired equitable title subject to the mortgage of the Glenn Justice Mortgage Company and the balance due on the

real estate contract. The trial court gave no indication of the nature of the title that plaintiff had purchased. It makes no difference because an appellate court is not bound by a trial court's interpretation of a written document, where the interpretation rests solely upon the wording of the document. *Price v. Johnson*, 78 N.M. 123, 428 P.2d 978 (1967). There being no reservations in the deed from Brooks to the plaintiff, he acquired their equitable title in the property subject to the mortgage and the real estate contract which he also agreed to assume and pay.

As to finding No. 3, the transaction referred to is obviously the purchase by the plaintiff of the interests of Brooks. There is substantial evidence in the record to show that Lane had actual knowledge of this transfer, as well as the escrow agent and the mortgage company. What payments the trial court is referring to, is not clear. However, as our Supreme Court pointed out in *Franklin's Earthmoving, Inc., v. Loma Linda Park, Inc.*, 74 N.M. 530, 534, 395 P.2d 454, 457 (1964):

> "The function of a reviewing court is to correct an erroneous result, not to correct errors which could not change the result. [Citations omitted.] Only ultimate facts required to support the judgment are necessary findings."

Assuming, but not deciding, that this part of the finding is in error, it could not change the result and it is not an ultimate fact.

Lane does not deny that he purchased Baca's interest in the property and received an assignment of their interest in the real estate contract. What he does contend is that there is no evidence to support the finding insofar as that he acquired Baca's interest for the real estate commission. I agree with this contention, but the error is harmless because it can be corrected on remand.

Lane argues that the error in finding No. 5 is that the notice of default that was sent to the Brooks stated that they were in default in the sum of $242.00. This contention is correct, but this too is harmless error and can be corrected on remand.

Lane contends that finding No. 6 is in error because there is no evidence in the record to support the statement that only $182.00 is due him. This too is correct. It is also harmless error and can be corrected on remand.

In my opinion, finding No. 7 is not supported by evidence in the record and if considered as a conclusion of law, it is in error. However, these are not ultimate facts and the error is harmless.

> "The makings of unnecessary and superfluous findings of fact or the presence of error in findings of fact on immaterial, irrelevant, or purely collateral issues is harmless and nonreversible error if the judgment is otherwise sufficiently supported." *United Veterans Org. v. New Mexico Prop. App. Dept.*, 84 N.M. 114, 118, 500 P.2d 199, 203 (Ct.App.1972).

Finding No. 8 is supported by substantial evidence in the record.

The pertinent part of finding No. 9 is that Lane did not send a notice of default to the plaintiff. The balance of the finding is erroneous. However, this error would not change the result.

Lane does not dispute that the plaintiff made the mortgage payments from July 1974 through August 1975, as set forth in finding No. 10. He does argue that there is no evidence to support the statement that he was in possession during that period and collecting rents. I agree; but this error would not change the result and the exact amount of rents collected by Lane can be determined on remand.

Lane's so-called second point of error is an allegation: "David L. Lane is the owner of the tract of real estate, [sic] title to which is the subject matter of this litigation." An allegation is "the assertion, declaration, or statement of a party to an action, made in a pleading, setting out what he expects to prove." Black's Law Dictionary (4th Ed.). A point of error, as contemplated by our Appellate Rules, is a specification of an alleged error committed by the trial court and upon which the appellant

seeks reversal. Consequently, there is nothing to discuss.

Lane's third point of error reads as follows: "David L. Lane was not equitably estopped from asserting title to the subject tract of real estate." I assume that *what* Lane intended to say was that the trial court erred in concluding that he was equitably estopped from asserting title to the subject property. This point is well taken in my opinion.

It is my opinion that equitable estoppel does not apply in this situation. The rule in regard to equitable estoppel is stated at 19 Am.Jur., "Estoppel" § 42:

"The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Westerman v. City of Carlsbad*, 55 N.M. 550, 555, 237 P.2d 356, 359 (1951).

Element (1) as to the party claiming estoppel is lacking. An interpretation of this element might read: A party cannot invoke estoppel as to facts which, in the exercise of reasonable diligence, he should know. Ortiz, in my opinion, could and should have requested a title insurance policy or the opportunity to examine a current abstract when he purchased his interest in the subject property from Brooks. Had he done so, he could have learned of Lane's interest and notified him to send all notices concerning the contract to him.

Nonetheless, I believe that Ortiz should be relieved of the forfeiture of the contract because it would be unconscionable to allow it to stand considering the amounts Ortiz has paid toward the mortgage and the contract and considering the amount he has spent in improvement of the subject property.

"Equity as a code of conscience takes cognizance of delicate distinctions between right and wrong in human conduct. [Citation omitted.] Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents. It looks to the substance rather than the form. *It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality.* And once rightfully possessed of a case it will not relinquish it short of doing complete justice. It weighs the equities between the parties and adopts various devices to protect against unjust enrichment." *Merrick v. Stephens*, 337 S.W.2d 713, 719 (Mo.App. 1960). [Emphasis added.]

This case should be remanded with instructions to the trial court to modify its judgment as follows:

(1) Relieve Ortiz from the forfeiture upon condition that within 60 days he pay the following sums to the clerk of the court to be distributed to Lane under the order of the court.

(a) all averages of principal and interest due on the real estate contract;

(b) any sums paid by Lane for ad valorem taxes upon the subject property;

(c) the amount of any sums paid by Lane for improvements made to the subject property by him. •

(2) Order Ortiz and his wife to execute a special warranty deed of the subject property to Lane and to deposit it with the escrow agent within 60 days.

(3) Order Lane to redeposit the special warranty deed from Brooks to Baca within 60 days and declare the recording by Lane to be of no effect.

**520**

(4) Order Lane to execute a warranty deed from him to Ortiz of the subject property, subject to the mortgage of the Glenn Justice Mortgage Company, Inc., current ad valorem taxes, easements and restrictions of record and deposit it with the escrow agent within 60 days.

(5) Order Lane to furnish the court with receipts of any ad valorem taxes paid on the subject property and proof of any expenditures made for improvements within 45 days.

(6) Order Lane to deposit all rents of the subject property received by him with the Clerk of the court within 60 days. These rents are then to be distributed to Ortiz under order of the court.

(7) Enter its order reinstating the real estate contract and restoring Ortiz to possession upon proof that he has complied with all of the foregoing.

(8) Assess all costs to Lane.