The **FIRST NATIONAL BANK & TRUST COMPANY OF CHICKASHA**, Appellee,

v.

**UNITED STATES of America**, Appellant.

No. 71–1610.

United States Court of Appeals, Tenth Circuit.

July 28, 1972.

Gene A. Castleberry, Oklahoma City, Okl. (Robert E. Shelton, Oklahoma City, Okl., and Robert B. Park, Chickasha, Okl., on the brief), for appellee.

Richard Farber, Tax Div., Dept. of Justice, Washington, D. C. (Fred B. Ugast, Acting Asst. Atty. Gen., Meyer

Rothwacks and Daniel B. Rosenbaum, Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Before HILL and BARRETT, Circuit Judges, and LANGLEY*, District Judge.

BARRETT, Circuit Judge.

The Government is appealing from the District Court's judgment for the First National Bank & Trust Company of Chickasha (taxpayer), 329 F.Supp. 1147, wherein the taxpayer sought a refund of taxes alleged to have been erroneously paid in 1966 under Section 165 of the Internal Revenue Code relating to losses from the demolition of buildings. The District Court allowed a demolition loss to the taxpayer.

The taxpayer entered into a "Contract for Sale of Real Estate" on May 17, 1965 to purchase the Salter building from Mr. and Mrs. Salter for $56,400. At that time the bank's directors intended to demolish only a small storage building in the rear of the Salter building, valued at $2,500, in order to provide a "drive-in" facility. The directors then also intended to remodel the Salter building. About one-half was contemplated for additional bank offices and the balance for lease-rental.

The sales contract provided that $15,000 of the purchase price was to be paid on August 1, 1966 concurrent with the Salters' execution and delivery of a Warranty Deed. A note was executed with the Warranty Deed by the taxpayer to the Salters for the balance of $41,400 to be paid in three installments.

The possession of the Salter building and the Warranty Deed remained with the Salters some 14 months after the execution of the Contract to Sell at the specific request of the Salters. They wished to allow a long-time tenant enough time to liquidate its business in the Salter building. The taxpayer acquiesced, and the sales contract fully contemplated these arrangements. In the late spring and early summer of 1966 the taxpayer demolished the small storage building in the rear of the Salter building to make room for a proposed "drive-in" facility.

The taxpayer took possession of the building on August 1, 1966. Several days later the board of directors adopted a recommendation of the building committee to demolish the entire building. It was demolished several months later.

The taxpayer claimed a demolition loss deduction under Section 165 of the Code in its tax return for 1966. The Commissioner denied the deduction, holding that the "purchase" of the Salter property occurred on August 1, 1966 rather than on May 17, 1965 and that on August 1st the taxpayer had already decided to demolish the building. The Commissioner relied upon Treasury Regulation 1.165–3(a) and (b). The District Court overruled the Commissioner. The Court held that the "purchase" occurred on May 17, 1965 and found that the taxpayer was entitled to a loss deduction on demolition of the building since there was no intention by the taxpayer to demolish the building on May 17, 1965.

The issue is whether under Regulation 1.165–3(a) and (b) the purchase of the Salter building occurred on May 17, 1965 when the contract to sell was entered into, or on August 1, 1966 when the Warranty Deed and possession of the building and property were delivered to the taxpayer. No deductible loss is allowed if the intent to demolish is formed at the time of purchase. A deduction is allowed only when the intent to demolish is formed after the property has been purchased.

The Government contends that a "purchase" as contemplated in Treasury Regulation 1.165–3(a) does not occur until the deed is delivered or the benefits and burdens of ownership are transferred to the buyer. It alleges that even though "purchase" is not defined in the Code or the Regulations, the term "acquisition" is used interchangeably with it and that

it must be defined as used in other tax contexts.

The general rule is that where the words in statutes are not defined they are to be interpreted in their ordinary, everyday sense. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). The commonly accepted definition of "purchased" is a binding agreement to pay an agreed price. It may be a complete or an incomplete transaction in terms of tender, but it must be binding and enforceable. To "purchase" can mean to own by paying or by promising to pay an agreed price, enforceable at law.. 73 C.J.S. Purchase (1951). Under any definition of "purchase" the transaction must be viewed in its entirety and if sufficient events occur a purchase can be found. Morco Corporation v. Commissioner of Internal Revenue, 300 F.2d 245 (2nd Cir. 1962).

The contract entered into by the parties was an exchange of mutual promises, i.e., the seller promised to sell and the buyer promised to buy. The contract terms were definite. Even though the contract was executory, equity regards things agreed to be done as actually performed. In this situation equity treats the vendee as the beneficial owner of the premises, even though he has not paid the purchase price, and holds that the vendor has the right to enforce payment of the purchase price. The contract operates as an equitable conversion. The vendee's interest becomes realty and the vendor's interest becomes personalty. In equity the purchaser is regarded as the owner liable for payment of the purchase price. The vendor holds the legal title in trust for him. A claim and cause of action for damages and/or specific performance vested in both of the contracting parties at the time the Contract for Sales of Real Estate was executed on May 17, 1965. Almac's Inc. v. Commissioner, 20 T.C.M. 56 (1961).

Although the deed and possession of the Salter property did not pass to the taxpayer until August 1, 1966, and even though no payments were made until that time, both parties intended to be bound under the contract. The storage shed was torn down before August 1, 1966 by the taxpayer at its sole cost and expense with full consent of the Salters. This constituted a detriment on behalf of the buyer. It would not have been allowed by the sellers if they did not consider themselves bound by the contract. The sellers considered the building sold on May 17, 1965. They knew that they would be paid the purchase price, or, in the alternative, that they could enforce the contract upon the buyer. The seller requested the delay between May 17, 1965 and August 1, 1966 to effect transfer of title and possession to the taxpayer in order to assure his long-time tenant in the building time to liquidate its business. The intention of the parties was to be bound on May 17, 1965. We concur with the Trial Court in holding that the purchase occurred on May 17, 1965 and in allowing the loss deduction to the taxpayer on demolition of the building for federal income tax purposes.

Affirmed.