ROBERT W. LAWVER AND DORLA H. LAWVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lawver v. Commissioner
Docket No. 12008-78.
United States Tax Court
T.C. Memo 1981-192; 1981 Tax Ct. Memo LEXIS 548; 41 T.C.M. (CCH) 1306; T.C.M. (RIA) 81192; April 22, 1981. *548 Held, petitioners did not acquire land and buildings with the intent to demolish the buildings but acquired them for purposes of rental and investment and petitioners are therefore entitled to a deduction for loss on demolition of the buildings under sec. 165, I.R.C. 1954. Held further, petitioners are entitled to deduct expenses of the properties in excess of rentals under sec. 183, I.R.C. 1954. John C. Blickle, for the petitioners. John P. Graham, for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined a deficiency of $ 12,450 in petitioners' Federal income tax for the year 1976. The issues for our decision are: (1) Whether petitioners are entitled to a deduction under section 165 for a loss from the demolition of certain buildings or, alternatively, whether petitioners are entitled to a charitable deduction under section 170 for the donation of such buildings to a volunteer fire department or, alternatively, whether petitioners are entitled to a deduction under section 212 of the remaining bases of the buildings. (2) Whether petitioners are entitled to deduct expenses attributable to the buildings in excess of the gross rentals *549 received therefrom. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioners Robert W. Lawver and Dorla H. Lawver, husband and wife, resided in Uniontown, Ohio, at the time they filed their petition herein. Their tax return for 1976 was timely filed with the Office of Internal Revenue Service at Cincinnati, Ohio. Petitioners have been employees of Hopkins Funeral Home for many years and at the time of trial were resident funeral directors of the Hopkins Funeral Home in Uniontown, Ohio. They have also been active in the business of leasing real property since 1964. At the time of trial, petitioners owned investment properties located at: 34 South Cleveland Avenue, Mogadore, Ohio
46 South Cleveland Avenue, Mogadore, Ohio
50 South Cleveland Avenue, Mogadore, Ohio
3901 Bradley Street, Mogadore, Ohio
Two acres on Hoover Avenue, Uniontown, Ohio
2408 Leland Avenue, Akron, Ohio
These investment properties have generated sufficient income at least to maintain the properties and pay the mortgages, and petitioners have made *550 capital improvements on some of their rental properties. Sometime prior to the summer of 1975 Mr. Lawver became a member of a civic task force, the purpose of which was to make a five-year study of the feasibility of new church development in Uniontown and surrounding areas. As a result of his participation in the civic task force, Mr. Lawver concluded that the Uniontown area would experience substantial growth and development in future years and accordingly decided that he and his wife would invest in property in the Uniontown area. In the early summer of 1975, petitioners began their search for investment property in the Uniontown area and in September of that year, after looking at four other properties, found a property that they considered desirable. The two frame houses situated thereon were similar to other buildings in town and one of the houses was under lease to two tenants. On September 3, 1975, petitioners entered into a "purchase and sale" contract with Phil Wagler Construction, Inc., for the purchase of the said property located at 3551-3553 Northdale Avenue, Uniontown, Ohio (the Northdale Avenue property), for the sum of $ 35,000. A warranty deed dated September *551 12, 1975, was signed and notarized, and field notes dated October 27, 1975, were attached to the deed. On November 21, 1975, the warranty deed was received by the county recorder of Stark County, Ohio, and recorded November 24, 1975. On October 16, 1975, Mr. Lawver signed an agreement with Margaret Morgan, the then current tenant, for the rental of the west half of the house at 3551 Northdale Avenue, and another agreement with Larry West, also a current tenant, for the rental of the east half of the house. The rental agreements were month-to-month leases which provided that Margaret Morgan and Larry West would pay rents of $ 75 and $ 100 per month, respectively, and that the tenant was entitled to 60-days' written notice to vacate. Petitioners became aware that their competitor, Howard J. Hecker, was planning to open a funeral home in Uniontown. An advertisement appearing in the Akron Beacon Journal on October 14, 1975, promoted the future "Howard J. Hecker Funeral Home" and promised that it would be open soon, "to serve Uniontown and surrounding areas." Realizing that much of the existing business of Hopkins Funeral Home originated from the Uniontown market area, petitioners decided *552 it would be unwise to continue to rely on the existing facilities in Akron and Mogadore to attract customers from that area and contemplated opening their own Uniontown facility. Late in the summer or early fall of 1975, Mr. Lawver was introduced to Ray Graham, an architect. The introduction was arranged to discuss the possibility of Graham performing architectural services for the Hopkins Funeral Home sometime in the future. Subsequent conversations concerned work at the two existing facilities of Hopkins Funeral Home, in Akron and Mogadore, and possibly a third facility. Graham testified that he and Mr. Lawver had an understanding that petitioners would hire Graham and sometime in September 1975 Graham and petitioners entered into a standard architectural services agreement which stated the hourly rates charged by Graham, but did not designate any specific projects. The first task which Graham undertook in his professional capacity for petitioners was to view various sites in Uniontown other than the Northdale Avenue property. This investigation did not take place until the middle of September. Petitioners and Graham considered several possible locations for the new funeral *553 home, one located on Canton Road which Graham studied as to the feasibility of simply remodeling an existing nursing home located thereon. Another was property located south of the intersection of Canton Road and Northdale Avenue. Graham did not inspect the Northdale Avenue property until late September. On October 1, 1975, he completed a site study to determine whether a building of the desired size with the required parking could be accommodated and still leave room for some landscaping. It took Graham only a couple of days to complete the study and it was submitted for approval to the Stark County Health Department of Canton, Ohio. That Department generally turns to the Environmental Protection Agency of Ohio (E.P.A.) for assistance in any investigation of property for non-housing use. The E.P.A. at first determined that the Northdale Avenue property would not be suitable for a funeral home because of a water percolation problem but stated that the property continued to be suitable rental property. Eventually petitioners received the necessary approval and permits and decided to proceed with the plan to build the funeral home on the Northdale Avenue property. In January *554 of 1976, petitioners purchased fire insurance in the amount of $ 20,000 and liability insurance in the amount of $ 100,000 upon the unoccupied building located at 3553 Northdale Avenue. The insurance premium, $ 147, was paid by check drawn on their account titled "Lawver Rent Account." In the spring of 1976, petitioners gave notice to vacate to the tenants of the 3551 Northdale Avenue building. An official of the Uniontown Fire Department, who had become aware of petitioners' plan to construct a funeral home on the Northdale Avenue property and tear down the buildings situated thereon, approached petitioners and requested that the Uniontown Fire Department be allowed to use the buildings, which were structurally sound, for training exercises. Inasmuch as they planned to demolish the structures and such an exercise would benefit the community, petitioners decided to contribute the buildings to the Uniontown Fire Department. Mr. Lawver and the Uniontown Fire Department entered into a written agreement granting permission to the Fire Department to burn the structures in a controlled training exercise. There was no deed or other formal conveyance. On July 18, 1976, the structures *555 on the Northdale Avenue property were burned down in a controlled fire by volunteer fire departments of Uniontown, Greentown, and Lakemore, Ohio. Over 50 members of the various fire departments participated in the controlled fire and training exercises were conducted over a period of several days. The Northdale Avenue property became the site of the Uniontown branch of the Hopkins Funeral Home, which was built subsequent to July 18, 1976, at an approximate cost of $ 320,000. On their Federal income tax return filed for 1975 petitioners, on the advice of an appraiser, allocated $ 25,850 of the total purchase price for the Northdale Avenue property to the structures. In that tax return, petitioners reported gross rent of $ 518, depreciation of $ 862 (computed on a 15-year life and a straight-line method), interest expense of $ 211 and miscellaneous expense of $ 4 resulting in a net loss of $ 559 from the property. In their 1976 income tax return, petitioners reported gross rent of $ 400, depreciation of $ 1,723, insurance expenses of $ 147, and real estate taxes of $ 328 for a net loss of $ 1,798. Petitioners also claimed for 1976 a demolition loss in the amount of $ 23,265 representing *556 the unrecovered basis of the structures on the Northdale Avenue property. OPINION Issue 1. Deduction under section 165 for loss from demolition of buildings. Respondent contends that at the time they purchased the Northdale Avenue property, petitioners intended to demolish the buildings and are therefore not entitled to a deduction under section 165. Petitioners assert that at the time of their purchase of the property, they did not intend to demolish the structures but rather intended to rent them out and hold the property for investment. They contend that they formed the intent to demolish only later and therefore are entitled to the loss. Section 165(a) provides generally that "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of individuals, section 165(c) limits the deduction under section 165(a), with the exception of casualty losses, to losses incurred in a trade or business or in a transaction entered into for profit. Section 1.165-3(a), Income Tax Regs., provides that when real property is purchased, in the course of a trade or business or in a transaction entered into for *557 profit, with the intention of demolishing the building situated thereon, no deduction under section 165 shall be allowed on account of the demolition of the building. [1] *558 Section 1.165-3(b), Income Tax Regs., provides that if such intent is formed subsequent to purchase, the loss incurred at the time of demolition will be deductible to the extent of the building's adjusted basis increased by the costs of demolition.[2] *559 Nash v. Commissioner, 60 T.C. 503, 512 (1973); Gilman v. Commissioner, 72 T.C. 730, 737 (1979). The mere renting of the buildings will not sustain a loss on demolition if the taxpayer had the intent to demolish at the time of purchase. Nash v. Commissioner, supra at 514; Lynchburg National Bank & Trust Co. v. Commissioner, 20 T.C. 670, 674 (1953), affd. 208 F.2d 757 (4th Cir. 1953). The burden is upon petitioners to show that at the time of purchase, they did not have the intent to demolish. Rule 142(a), Tax Court Rules of Practice and Procedure. In Meyer v. United States, 247 F. Supp. 939, 944 (D. Mass. 1965), aff. per curiam 362 F.2d 264 (1st Cir. 1966), the District Court stated: As used in Treasury Regulations section 1.165-3, the phrase "with the intention of demolishing either immediately or subsequently the buildings situated thereon" should be interpreted as though it read "with the dominant intention." Rarely does a man have an intention which he is not prepared to yield to circumstances. What a draftsman of regulations implies when he uses word "intention" is an intention or purpose to be followed under circumstances which are foreseen as more probable than not. Also see Nash v. Commissioner, supra at 513. Section 1.165-3(c)(2) and (3), Income Tax Regs., set forth various factors, all of which are to be considered in determining intent at the time of purchase. [3] *561 The determination of intent is a question of fact and depends upon an examination of all the surrounding facts and circumstances. *560 United States v. Ivey, 294 F.2d 799, 807 (5th Cir. 1961); Canelo v. Commissioner, 53 T.C. 217 (1969), affd. per curiam 447 F.2d 484 (9th Cir. 1971); Montgomery Co. v. Commissioner, 330 F.2d 950 (6th Cir. 1964), affg. a Memorandum Opinion of this Court; section 1.165-3(c)(1). [4] *562 Respondent focuses his arguments on November 21, 1975, the date of filing the deed to the Northdale Avenue property with the County Recorder of Stark County, Ohio. Petitioners focus their arguments on September 3, 1975, the date of execution of the contract for purchase and sale of the property. The date of purchase of property for purposes of determining whether an intent to demolish existed at the date of purchase is the date of execution of the contract of purchase and sale. First Nat. Bank & Trust Co. of Chickasha v. United States, 462 F.2d 908 (10th Cir. 1972), affg. 329 F. Supp. 1147 (W.D. Okla. 1971); [5]Stern v. Commissioner, 14 B.T.A. 838 (1928). Although the deed and possession of the *563 Northdale Avenue property may not have passed until sometime after September 3, 1975, the parties, by the execution of the contract for purchase and sale, dated September 3, 1975, intended to be bound as of that date. First Nat. Bank & Trust Co. of Chickasha v. United States, supra.Respondent's focus on November 21, 1975, is therefore misplaced. In view of our determination that the pertinent date is September 3, 1975, and after careful consideration of the entire record and the factors listed in the regulations, we believe that petitioners have sustained this burden of proving that at the time of their purchase of the Northdale Avenue property, they did not intend immediately or subsequently to demolish the buildings thereon. Petitioners had a history of substantial rental activity and the Northdale Avenue property was well suited for such rental activity. There were already two tenants renting the house at 3551 Northdale Avenue prior to the purchase by petitioners. *564 The buildings were structurally sound and were suitable for continued rental. The lease between petitioners and the tenants provided for fixed rents and for not less than 60-days' notice to vacate. [6] *565 Respondent points out that the total rent received was only $ 175 per month and contends that such rent does not justify a $ 35,000 investment. However, even if we considered $ 35,000 too high a price to pay for a return of $ 175 per month, petitioners viewed the entire Uniontown area as one of growth and development and hoped not for increased rents but also for appreciation in value enabling profitable resale. [7] It is petitioners' intent which is of paramount importance and not the reasonableness of their business judgment. See Nash v. Commissioner, supra at 513; section 1.165-3(a) and (b), Income Tax Regs; but see section 1.165-3(c)(2)(v), Income Tax Regs. We therefore conclude that petitioners purchased the Northdale Avenue property for their investment and rental business and subsequently, because of changed conditions and circumstances, decided to demolish the structures and build the new funeral home thereon. The fact that a competing funeral home would be opening soon in the Uniontown area, that a substantial part of Hopkins Funeral Home business originated from Uniontown, and that petitioners would lose much of the new business of the growing area of Uniontown to the new competing funeral home are the "changed conditions and circumstances" which led to petitioners' decision to abandon their original plan to rent out and hold the Northdale property for purposes of investment. Mr. Graham, the architect, was first introduced to petitioners in the late summer or early fall. He did not investigate all the possible *566 sites, prepare the site study for the Northdale Avenue property, or begin to proceed through the bureaucratic red tape necessary for approval of the new funeral home, until after petitioners signed the agreement for purchase and sale. The petitioners were not even certain that construction of a funeral home on the Northdale Avenue property was feasible until well after the signing.The lack of adequate investigation and planning prior to their purchase supports our finding that the petitioners formed the intent to demolish subsequent to the purchase. Petitioners are therefore entitled to a deduction under section 165 for the loss from the demolition of the buildings on the Northdale Avenue property. In view of this conclusion, we find it unnecessary to consider petitioners' alternative contentions that they are entitled to a charitable deduction under section 170 or a deduction of the remaining bases under section 212. Issue 2. Deductions in excess of gross rental. Respondent contends that petitioners are not entitled to deductions attributable to the Northdale Avenue property in excess of the gross rent of $ 400 because petitioners did not have a profit motive in purchasing the *567 Northdale Avenue property and thus were engaged in "an activity not engaged in for profit" within the meaning of section 183. Section 183(a) provides generally that no deduction attributable to an activity not engaged in for profit shall be allowed except as otherwise provided for in that section. Section 183(b)(1) allows those deductions that are not predicated on the existence of a profit motive (e.g., interest and taxes). Jasionowski v. Commissioner, 66 T.C. 312, 320 (1976). Section 183(b)(2) provides that a deduction for an activity not engaged in for profit shall be allowed as if an activity were engaged in for profit "only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as an activity "other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Thus, if the deductions are not allowable under section 162 and section 212(1) and (2), the deduction rules of section 183(b) will apply. Section 1.183-1(a), Income Tax Regs. In general, *568 section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212(1) and (2) allows individuals a deduction for ordinary and necessary expenses paid or incurred for the collection of income and for the management, conservation or maintenance of income producing property. The test under section 183 is not whether the taxpayer's intention and expectation of realizing a profit was reasonable but whether such intent and expectation was bona fide. Section 1.183-2(a), Income Tax Regs.; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979). In determining whether a taxpayer had a profit making motive, all the surrounding facts and circumstances must be taken into account. Section 1.183-2(b), Income Tax Regs. The burden of proving the requisite intent is on petitioners. Golanty v. Commissioner, supra at 426. The regulations set forth a list of factors which are to be considered in determining whether an activity was engaged in for profit; however, this list is not exhaustive and other factors are to be taken into account. [8]Section 1.183-2(b), Income Tax Regs. No one factor is determinative. *569 Section 1.183-2(b), Income Tax Regs. The factors listed in the regulations include: (1) The manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisor, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) whether elements of personal pleasure or recreation are involved. Respondent's determination that petitioners were engaged in an activity without an intent to make a profit is based upon his determination that the petitioners' intent at the time of *570 purchase of the Northdale Avenue property was to demolish the buildings situated thereon. Once again, he points to rents of only $ 175 per month, $ 518 total rent collected in 1975 and $ 400 total rent collected in 1976, and concludes petitioners did not have a profit motive when purchasing the property. We find that petitioners purchased the Northdale Avenue property with an intent and expectation of making a profit and therefore did not engage in an "activity not engaged in for profit" within the meaning of section 183. Petitioners had a history of substantial rental activity, the income and expenses of which have been duly reported in their Federal income tax returns. See section 1.183-2(b)(1) and (4), Income Tax Regs. The buildings were rented out prior to the purchase by petitioners and continued to be rented by the same tenants thereafter. The lease between the tenants and petitioners provided for fixed rents and for not less than 60-days' notice to vacate. [9] See section 1.183-2(b)(1), (3) and (5), Income Tax Regs. Petitioners also viewed the Uniontown area as one of development and growth and expected the land and the buildings situated thereon to appreciate in value. *571 Section 1.183-2(b)(4), Income Tax Regs. Petitioners expected that the payments received from the tenants renting the buildings situated on the Northdale Avenue property would generate sufficient income, as had their other investment properties, to maintain the Northdale Avenue property and pay off the mortgage thereon and that because of the expected growth of the Uniontown area they could at some time in the future increase the rent and sell the Northdale Avenue property for a substantial profit. Section 1.183-2(b)(4) and (5), Income Tax Regs.Although respondent contends that rentals of $ 175 per month do not justify a $ 35,000 investment, it is the petitioners' intent with which we are concerned, and their intent and expectation, whether reasonable or unreasonable, was one of making a profit. After considering all the surrounding facts and circumstances, we conclude that the expenses attributable to the buildings situated on the Northdale Avenue property are expenses incurred by petitioners in their trade or business and for the production of income and that petitioners did not engage in an "activity not engaged in for profit" within the meaning of section 183. *572 [10] Accordingly, respondent's disallowance of the expenses in excess of $ 400 was erroneous. Decision will be entered for Petitioners. Footnotes
1. SEC 1.165-3. Demolition of buildings. (a) Intent to demolish formed at time of purchase. (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a)↩ on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of sec. 1.167(a)-5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition. 2. SEC. 1.165-3(b) Intent to demolish formed subsequent to the time of acquisition. (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165 (a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of sec. 1.165-1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.
3. SEC. 1.165-3(c)(2) An intention at the time of acquisition to demolish may be suggested by: (i) A short delay between the date of acquisition and the date of demolition; (ii) Evidence of prohibitive remodeling costs determined at the time of acquisition; (iii) Existence of municipal regulations at the time of acquisition which would prohibit the continued use of the buildings for profit purposes; (iv) Unsuitability of the buildings for the taxpayer's trade or business at the time of acquisition; or (v) Inability at the time of acquisition to realize a reasonable income from the buildings. (3) The fact that the demolition occurred pursuant to a plan formed subsequent to the acquisition of the property may be suggested by: (i) Substantial improvement of the buildings immediately after their acquisition; (ii) Prolonged use of the buildings for business purposes after their acquisition; (iii) Suitability of the buildings for investment purposes at the time of acquisition; (iv) Substantial change in economic or business conditions after the date of acquisition; (v) Loss of useful value occurring after the date of acquisition; (vi) Substantial damage to the buildings occurring after their acquisition; (vii) Discovery of latent structural defects in the buildings after their acquisition; (viii) Decline in the taxpayer's business after the date of acquisition; (ix) Condemnation of the property by municipal authorities after the date of acquisition; or (x) Inability after acquisition to obtain building material necessary for the improvement of the property. ↩
4. SEC. 1.165-3(c) Evidence of intention. (1) Whether real property has been purchased with the intention of demolishing the buildings thereon or whether the demolition of the buildings occurs as a result of a plan formed subsequent to their acquisition is a question of fact, and the answer depends upon an examination of all the surrounding facts and circumstances. The answer to the question does not depend solely upon the statements of the taxpayer at the time he acquired the property or demolished the buildings, but such statements, if made, are relevant and will be considered. Certain other relevant facts and circumstances that exist in some cases and the inferences that might reasonably be drawn from them are described in subparagraphs (2) and (3) of this paragraph.The question as to the taxpayer's intention is not answered by any inference that is drawn from any one fact or circumstance but can be answered only by a consideration of all relevant facts and circumstances and the reasonable inferences to be drawn therefrom.
5. In Klayman v. Commissioner, T.C. Memo 1973-200, we followed the holding in First Nat. Bank & Trust of Chickasha v. United States, 462 F.2d 908 (10th Cir. 1972); also see Butz v. Commissioner, T.C. Memo 1976-118↩.
6. Under the law of Ohio in effect during the taxable year 1975, in absence of a lease provision to the contrary, a landlord is required to give the tenant only 30-days' notice to terminate a month-to-month tenancy, Ohio Rev. Code Ann. sec. 5321-17(B) (Anderson), and then, in addition, 3-days' notice to vacate, Ohio Rev. Code Ann. sec. 1923.04(A) (Anderson Supp. 1980). See Siegler v. Batdorff, 63 Ohio App. 2d 76, 408 N.E. 2d 1383 (1979); Ewert v. Basinger, 59 Ohio Misc. 43↩ (Municipal Ct. 1978). 7. Although the exact date is not clear from the record, petitioners apparently purchased an additional 2 acres of land in Uniontown sometime after 1975.↩
8. The legislative history behind sec. 183 indicates that it was primarily directed at losses incurred in farming and "other hobbies". See Jasionowski v. Commissioner, 66 T.C. 312, 321↩ n. 6 (1976). Therefore, some of the "relevant factors" listed in the regulations were not designed to encompass the present situation.
9. See n. 6, supra↩.
10. We note that respondent's disallowance of deductions attributable to the Northdale Avenue property is based only upon his contention that petitioners were engaged in "an activity not engaged in for profit" within the meaning of sec. 183. Respondent on brief does not contend that petitioners are not entitled to a depreciation deduction in excess of net rental (gross income less expenses other than depreciation). See sec. 1.165-3(a)(2)(i), Income Tax Regs.; Nash v. Commissioner, 60 T.C. 503, 517-518 (1973). However, in view of our conclusion that petitioners did not purchase the Northdale Avenue property with the intent to demolish the buldings situated thereon, we would reach the same result under sec. 1.165-3(a)(2)(i), Income Tax Regs., as we reach under sec. 183↩.