John L. BEAR and Edna A. Bear, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 79–2191.

United States Court of Appeals, Tenth Circuit.

Submitted May 15, 1981.

Decided June 10, 1981.

Thomas F. McIntyre, Richard F. McDivitt and Franklin Jay Kivel of McIntyre, McDivitt & Casey, Oklahoma City, Okl., for petitioners-appellants.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Ann B. Durney and Stanley S. Shaw, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before SETH, Chief Judge, and HOLLOWAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

John L. Bear and Edna A. Bear, as successors in interest to Brookridge Development Company, Inc., appeal from a decision of the Tax Court determining that Brookridge failed to meet the nonrecognition requirements of Internal Revenue Code section 337 in the disposition of its inventory of thirty-eight lots sold to Pacesetter Homes Company. The only question on appeal is the validity of that determination.

On October 13, 1972, Brookridge adopted what it hoped was a plan of liquidation conforming to the requirements of I.R.C. § 337. That section provides that if a corporation adopts a plan of complete liquidation and, within twelve months, distributes in complete liquidation all assets of the corporation, less those retained to meet claims, no gain or loss is recognized to the corporation "from the sale or exchange by it of property within such 12-month period." I.R.C. § 337(a). The term "property" does not include inventory of the corporation unless the inventory is "sold or exchanged to one person in one transaction." *Id.* § 337(b)(2). A piecemeal disposition of inventory causes income recognition at the corporate level.

When Brookridge, a real estate development corporation, adopted its plan of complete liquidation, its entire inventory consisted of thirty-eight lots. Three days after adopting its plan of liquidation, Brookridge and Pacesetter entered into a real estate contract in which Pacesetter agreed to purchase the thirty-eight lots. The Tax Court upheld the Commissioner's determination that this contract with Pacesetter did not qualify as a disposition of Brookridge's inventory to one purchaser in one transaction resulting in nonrecognition of gain or loss at the corporate level. This appeal followed.

The October 16, 1972, contract with Pacesetter purported to sell all thirty-eight lots for the sum of $370,925. Pacesetter agreed to pay $10,000 down "as a part of the consideration of the sale [which sum] shall apply to the purchase of the first ten lots"; Pacesetter also gave a $20,000 noninterest bearing note "which shall apply to the purchase of the last three (3) lots, which shall be no later than October 15, 1974." The contract also provides in pertinent part:

> "The purchase of the first ten (10) lots shall be completed on or before ninety (90) days from the date of this contract. Five (5) additional lots shall be paid for no later than nine (9) months from the date of the signing of this contract, and five (5) additional lots shall be paid for at intervals not to exceed ninety (90) days thereafter."

Deeds were to be delivered at the time of payment in full for each lot; Pacesetter was entitled to select the lots as it progressed with the project. No interest was required to be paid by Pacesetter unless it requested and was granted an extension of time for closing, in which case it was to pay seven percent interest on any money due and payable. As lots were taken by the purchaser there was to be a proration between the purchaser and seller of the general taxes and special assessments as of the date of delivery of the deed. Abstracts or title policies were to be provided prior to delivery of the deeds. Finally, the contract provided, "[i]n the event this contract is not lived up to, then at the option of the seller, any money paid in cash and on deposit with the seller shall be forfeited and the $20,000 note shall immediately become due and payable."

Between October 16, 1972, and October 1, 1973, legal title to twenty-two of the thirty-eight lots in Brookridge Estates was transferred under the terms of the contract. On October 1, 1973, the sixteen remaining lots were deeded in a liquidating distribution to a partnership formed by the Bears. These lots were later conveyed to Pacesetter or Pacesetter's assignee; the last six were conveyed on September 6, 1974, at which time the $20,000 note was returned to Pacesetter.

In arguing that this was one transaction with a single purchaser completed within twelve months following the adoption of a plan of complete liquidation, the Bears stress that the contract sets forth a single total price and commits Pacesetter to acquire all of the lots. It points out that all of the normal remedies of contract law, including specific performance, were available to Brookridge or its assignee to enforce the contract.

The government argues that this is not a bulk sale as contemplated by I.R.C. § 337(b)(2), stressing the individual pricing of the lots, Pacesetter's right to select individual lots, the two years permitted for completing all purchases, the lack of interest payments unless an extension of time was requested, the provision for abstracts or title policies at the time lots were conveyed, proration of taxes as of the date of payment for individual lots, and the fact that Brookridge still retained title to sixteen of the thirty-eight properties almost a year after adoption of the plan, and that final conveyance of the last lots by Brookridge's assignee did not occur until nearly two years after adoption of the plan.

We have examined the record carefully and agree with the Tax Court that this contract is not a completed sale within the meaning of the I.R.C. § 337. We have held, based on the doctrine of equitable conversion, that a sale may be complete within the contemplation of the tax law before possession is transferred or a deed is delivered. *First Nat'l Bank & Trust Co. v. United States*, 462 F.2d 908 (10th Cir. 1972). Conditions which excuse a buyer from performance or delay the duty to pay or to accept title are relevant in determining whether a sale or exchange has been completed under section 337. Treas.Reg. § 1.337–2(a) (1955) provides:

> "The date on which a sale occurs depends primarily upon the intent of the parties to be gathered from the terms of the contract and the surrounding circum-

stances. . . . Moreover, an executory contract to sell is to be distinguished from a contract of sale. Ordinarily, a sale has not occurred when a contract to sell has been entered into but title and possession of the property have not been transferred *and* the obligation of the seller to sell or the buyer to buy is conditional."

(Emphasis added). The question when the sale is completed is essentially one of fact; the transaction must be viewed as a whole. Among factors to be considered are the transfer of legal title and the shift in benefits and burdens of the property. In the instant case the transfer of legal title, the proration of taxes, and the shifting of burden and benefits with respect to each lot did not occur until the lot was selected and paid for. There was no interest on the deferred payment of the purchase price. We believe the evidence is clear that Brookridge merely entered into an executory contract to sell the lots to Pacesetter; so structured, the contract was not a disposition in one transaction to one purchaser completed within twelve months of the adoption of the plan of liquidation.

AFFIRMED.